# Ford *v.* Ford's Adm'r.

*Final Settlement of Administrator's Accounts.*

1. *Petition for order to sell lands, for payment of debts; conclusiveness of decree.*—An application by an executor or administrator for an order to sell lands for the payment of debts (Code, §§ 2447–56), when contested by the heirs or devisees, becomes an adversary suit *inter partes*; and the decree rendered, whether granting or refusing the application, is conclusive between the parties, in any subsequent suit or contest, as to the matters then in issue and determined; and that issue is as to the *status* of the estate, the sufficiency of the personal assets for the payment of debts, at that time, and not at a subsequent time. when the condition of the estate may have changed

2. *Same.*—Although the liability of the personal representative himself to the estate, for the rent of lands before or after the death of the decedent, may have been matter of controversy on the trial of such contest, as affecting the amount of assets liable for the debts, it was merely incidental or collateral matter, within the rule laid down in the *Duchess of Kingston's case* (2 Smith's L. C. 609); and the decree is not conclusive as to that question, on final settlement of the administrator's accounts.

APPEAL from the Probate Court of Choctaw.

In the matter of the estate of Mrs. Keziah Ford, deceased, on final settlement of the accounts and vouchers of James G. Ford as administrator. The decedent died in November, 1876, and letters of administration on her estate were duly granted, on the 9th February, 1877, to said James G. Ford, who was her son. In May, 1879, the administrator filed his accounts and vouchers for a final settlement, and the 9th June was appointed as the day for the settlement. William L. Ford and others, heirs and distributees of the estate, objected to the account as stated by the administrator, and moved to charge him, among other things, with "rent of lands known as the 'Upper place,' for each year, including the year 1870, to the day of said decedent's death, at $165 *per annum.*" In answer to this motion, the administrator filed a "replication," as it is termed, alleging that "on the 21st December, 1877, he filed a petition in said court for the sale of the lands of said estate to pay the debts of said estate; and on the trial of said cause, to ascertain the indebtedness of said estate, said contestants were parties to said cause, and were present by attorney, and moved the court to charge said administrator with the identical rents of said lands, and money had and received, which they move to surcharge said

[Ford v. Ford's Adm'r.]

account; and said administrator then and there presented to said court an account in favor of himself against said deceased, to show the indebtedness of said estate to him, and the necessity for a sale of said lands to pay said debt; and thereupon said contestants, by attorney, set up as a defense to said petition, among other things, that said administrator was indebted to said estate for the identical rents, and moneys had and received; and thereupon issue was joined, and the cause was duly heard by said court, on, to-wit, the 13th November, 1878, on the same identical facts and issues now set forth in said motion by said contestants; and the court then and there decided, that the evidence showed that Mrs. Keziah Ford died on the 9th November, 1876, and that during her life-time she resided with the said James G. Ford, who was her son; and that she had a right to make such disposition of her lands and moneys as she desired, and the presumption was that she did so; and the court would not investigate their transactions previous to her death, as the presumption is that the disposition of them was in accordance with her wishes; and after charging said administrator with all proper charges, and crediting him with all proper credits, the court found that the estate was not indebted to said administrator in a greater amount than $9.40, and that said administrator had in his hands, derived from rents since the death of said Keziah, more than enough to pay said amount; whereupon said court dismissed said petition, at the costs of said administrator. And said administrator shows to the court that he has charged himself with all rents received by him, and with which he is properly chargeable, in pursuance of said decree rendered as aforesaid, and now here pleads, in bar of said motion to surcharge, that a judgment of this court has been rendered on all matters involved in said motion, and that the judgment of this court, rendered as aforesaid, is conclusive of said motion," &c.

The contestants demurred to this pleading, and the judgment overruling their demurrer is now assigned as error, with other rulings which require no notice.

THOS. W. COLEMAN, for appellant.

THOS. COBBS, and S. H. SPROTT, contra.

BRICKELL, C. J.—When an application to the Court of Probate, by a personal representative, for an order to sell lands for the payment of debts, is contested, it assumes the form, and has the characteristics and properties, of a suit *inter partes*. The judgment or decree rendered by the court

[Ford v. Ford's Adm'r.]

is conclusive between the parties, in reference to the subject-matter of the suit, and the matters which were in issue and determined. If the judgment or decree is that the order of sale be granted, it is conclusive that, at the time of its rendition, the personal property of the estate is insufficient for the payment of debts. Or, if the judgment or decree is that the application be not granted, it is conclusive that the personal assets are then sufficient for the payment of debts. The judgment or decree has relation solely to the *status* of the estate in this respect, at the time of its rendition, and not to its *status* at some subsequent time, when new facts may have occurred changing it. Debts may come to the knowledge of the personal representative, and may be presented and preferred, of which he was uninformed, and the payment of which may render a sale of the lands necessary. Or, without fault on his part, the personal assets may be lost or diminished in value, rendering a sale of the lands necessary, which was unnecessary while the personal assets were available. The decree of the Court of Probate, refusing an order for the sale of the lands, and dismissing the application of the personal representative, as between him and the heirs who were parties, is conclusive, that the personal property of the intestate was, at the time of its rendition, sufficient for the payment of debts. The sale of the lands for the payment of debts was the subject-matter of the controversy ; and the issue was, the necessity for the sale because of the insufficiency of personal assets.

While a judgment or decree is conclusive between parties and privies, of the matters in issue and determined, it is not conclusive of matters drawn in controversy collaterally—merely given in evidence to support or controvert the matter directly in issue.—Freeman on Judgments, sections 257–8. The liability of the personal representative for the rents of the lands of the intestate, either during her life, or after her death, may have been matter of controversy on the trial of the application for the sale. The existence of the liability, if shown, was mere evidence of personal assets primarily chargeable with the payment of debts. Of such evidential facts, a judgment or decree is not conclusive. It is too well settled to require the citation of authority, that the conclusiveness of a judgment extends only to the question directly in issue, and not to any incidental or collateral matter, though it may have arisen and been passed upon. The doctrine was clearly stated in the *Duchess of Kingston's case*, 2 Smith's Lead. Cases, 609, that "neither the judgment of a court of concurrent or exclusive jurisdiction is evidence of any matter which came collaterally in question, though

within their jurisdiction, nor of any matter incidentally cognizable, nor of any matter to be inferred by argument from the judgment."

The Court of Probate erred in overruling the demurrer to the replication, as it is termed, by the administrator.

Reversed and remanded.