BANK OF DELAWARE, a corporation of the State of Delaware, Successor Trustee under the Last Will and Testament of SAMUEL FRANKLIN EWART, Deceased,

                              Plaintiff,

                              *vs.*

LANGDON W. HARRIS, JR., Executor of the Estate of M. PAULINE EWART, MARY H. EWART, M. VIRGINIA EWART, R. ELIZABETH CASEY, MRS. CARL G. RUFF, CATHERINE C. BOOK and VIRGINIA BOOK,

                              Defendants.

*New Castle, March 4, 1960.*

*Caleb S. Layton,* of Richards, Layton & Finger, Wilmington, for plaintiff.

*Rodman Ward, Jr.,* of Prickett & Prickett, Wilmington, for defendants, Langdon W. Harris, Jr., executor of estate of M. Pauline Ewart, Mrs. Carl Ruff, Catherine C. Book and Virginia Book.

*William Duffy, Jr.,* of Herrmann & Duffy, Wilmington, for defendants, Mary H. Ewart and M. Virginia Ewart.

*John P. Sinclair,* of Berl, Potter & Anderson, Wilmington, for defendant, R. Elizabeth Casey.

MARVEL, Vice Chancellor: The Bank of Delaware, successor trustee under the will of Samuel Franklin Ewart, seeks instructions as to how it should administer and distribute one half of a residuary trust set up in the testator's will, taking the position that such will appears to lack a specific provision governing the distribution of such property, M. Pauline Ewart, a life beneficiary of the income derived therefrom, having died October 28, 1958. The complaint joins as defendants, the executor of the estate of M. Pauline Ewart (Mrs. Ewart having survived the testator's son, Franklin, following a childless marriage), the beneficiaries named in such deceased widow's will, and the surviving widow and children of the testator's other son, Henry Ralph.

Samuel Franklin Ewart died on December 1, 1931, having directed in his last will and testament that his household furniture and jewelry be divided among his widow and his two sons, and that the residue of his estate be placed in trust the income therefrom to be divided under an equalizing formula, which took possible inter vivos gifts into consideration, between his widow and his two sons during the lifetime of the widow. The will further provided for the payment of one half of the income of the entire trust to each son for life after the death of the testator's widow. Upon the death of a son survived by a widow, one third of the income formerly payable to a son so dying was to go to his widow and two-sixths of the principal of a son's moiety thereupon was to become payable to such son's children share and share alike, the children of a deceased child to take by representation. However, in the event a son died leaving no widow, then the entire moiety of such son was to go to his issue or their children immediately. In the event a son was survived by a widow entitled to a life estate, then upon her death the remaining one sixth of principal of such son's moiety was to be paid over to such son's issue or their children as outlined above.

The will also took into consideration the possibility of a son dying leaving no widow or issue, directing in such event that the income of the whole estate was to be paid to the other son for life, then in part to such son's widow with the entire principal ultimately going to their issue or to the children of such issue as outlined earlier in the will,

thereby making provision for a cross remainder of a deceased son's moiety in the event that his childless wife predeceased him.

The will further directed that in the event one of the sons died without issue but leaving a widow, such widow was to receive the income of her husband's share of principal during the remainder of her natural life. Finally, the will directed that in the event neither son should leave issue, thereupon, subject to the testamentary rights of their widows, the entire income of the trust was to be paid annually to a Committee of Policemen of Wilmington for the purpose of making happy the poor children of the City of Wilmington at Christmas time.

Mrs. M. Pauline Ewart having died, and there being no issue of her marriage to Franklin, the question presented is what disposal should be made of that part of the trust estate from which she drew income during her widowhood? All parties have moved for summary judgment. Mary H. Ewart, the widow of Henry Ralph, has filed an affidavit in support of her motion, however, I have given no consideration to such document in construing the Samuel Franklin Ewart will, confining my analysis to the four corners of such document in deciding the question presented.

The executor of the M. Pauline Ewart estate and the beneficiaries named in her will contend that the Court may not supply language or otherwise read the Samuel Franklin Ewart will so as to benefit the widow and issue of his son, Henry Ralph, because the testator failed to make specific provision for the ultimate disposal of one half of his residuary estate in the event one of his sons left no issue but did leave a widow. In other words, such parties argue that the trustee finds itself in a dilemma because the testator failed to give unequivocal directions for the disposal of one half of the trust property on the death of a son's widow without issue, although there would be no doubt as to how such property should be distributed had such a wife predeceased the son. It is accordingly contended that Samuel Franklin Ewart died intestate as to such moiety of his estate and that such property must be distributed as intestate property as of the time of the testator's death in 1931.

In reply, counsel for the widow and children of Henry Ralph insist that such contention gives unwarranted importance to an unimportant factor, namely the priority of death as between a husband and wife, neither of whom was given a right under the will to share in principal. They take the position that Henry Ralph's widow and children are entitled to such moiety either as an express gift over or by way of an implied cross-remainder.

Viewing the will as a whole, it is readily apparent that the testator intended first of all to dispose of his entire estate. It is further apparent that his over-all intention was to insure that his sons and their widows should receive only income from the trust set up in his will, the principal thereof being ultimately payable to his grandchildren or to their children. It is also obvious that while the testator intended that the entire corpus of his estate should go to his grandchildren or the children of any deceased grandchild, he anticipated the possibility of an extinct line by providing for a gift over to charity in the event neither son left issue.

The will having clearly provided for a cross-remainder in the event one of his sons should die childless after the death of his wife, it would, in my opinion, fly in the face of the testator's testamentary scheme to rule that the testator died partially intestate merely because one of his sons was survived by a widow, who under the clear provisions of the will in question in no event was to be entitled to more than a life estate in the testator's property. However, may this Court in giving force to the entire Ewart will and in attempting to establish the true meaning and intent of the testator accept the arguments made by the Ewart defendants, *Bird v. Wilmington Society of Fine Arts,* 28 *Del.Ch.* 449, 43 *A.2d* 476?

In determining testamentary intent there is first of all a strong presumption against intestacy, and doubtful language in a will is to be construed so as to avoid even partial intestacy "* * * unless it clearly appears that the testator intended to die intestate as to part of her property * * *." *Shane v. Johnson,* 34 *Del.Ch.* 72, 99 *A.2d* 557, 558. The Ewart defendants contend that by reading as one paragraph

the language contained in paragraphs Fifth and Sixth[1] of the will a complete testamentary plan of a gift over is spelled out. Alternatively, they contend that a substitution of "and" for "or" in the second line below of paragraph Fifth of the will so as to cause the clause "a widow or issue" to be read as "a widow and issue" will give effect to the testator's obvious intent and purpose, *Jackson v. Schultz*, 38 *Del.Ch.* 332, 151 *A.2d* 284.

However, I do not think it necessary to be concerned with possible alteration of the actual phraseology of the will in view of a purposeful parallelism in the clauses of the donative scheme here employed. In *DuPont v. Equitable Security Trust Company*, 35 *Del.Ch.* 514, 122 *A.2d* 429, 433, a case concerned with an inter vivos trust and so not directly affected by the strong presumption against intestacy, it was held that a capricious intention to make an implied remainder to his grandchildren depend upon the adventitious circumstance of his divorced wife's re-marriage should not be imputed to the creator of an otherwise logical donative scheme. The holding of the majority of the Court was that the trust agreement in question contained an implied remainder gift to the settlor's grandchildren under the critical section of the agreement, not only because the specific language used, namely a reversion to the settlor should his daughter, having survived her mother, "die without leaving lawful issue," implied a remainder to her issue, but because a reading of the entire document, including its conditions for a reversion to the settlor only if the daughter should die without issue, made any other reading unreasonable, there being

---

1. "Fifth: In the event of either of my said sons, Henry Ralph Ewart or Franklin L. Ewart, dying without leaving a widow or issue, then I authorize and direct my said Trustee to pay to the survivor of them the income of the whole of said Trust Estate for the full term of his natural life, and upon his death to pay over, transfer and deliver the principal thereof according to the same terms and conditions and the same basis of distribution of principal and income as set out in Sections Third and Fourth of this my last Will and Testament."

"Sixth: In the event of either of my said sons dying leaving a widow but no issue, then I order and direct my said Trustee to pay to such widow for and during the full term of her natural life the same proportion of the income of my said Trust Estate as her husband was entitled to receive at the time of his death."

no indication therein that a corpus provision for the benefit of the settlor's grandchildren after his divorced wife's death should be made to depend on whether or not she had remarried.

Such reasoning applies with even greater force to this case where it is clearly established that a complete divestment of property by a testator was intended, and a complex plan to insure the preservation of corpus for his grandchildren and their children was sought to be developed. It would be absurd to make the devolution of half of the trust property set up in the Ewart will deviate from the clear course delineated by the testator in other parts of his will solely because one of the testator's sons predeceased rather than survived his wife, *Willis' Estate*, 11 *Pa.Dist. & Co.R.2d* 166. It was obviously the testator's intention to benefit his more remote blood descendants and not the beneficiaries under a daughter-in-law's will, he having provided for an ultimate gift over and then to charity only in the event his two sons should die without issue. Accordingly, I construe the will as providing for an implied cross remainder to the widow and issue of the testator's son, Henry Ralph, Franklin's widow having died and there being no issue.

On notice an order will be entered directing the successor trustee to administer the moiety of the trust estate from which Franklin L. Ewart and M. Pauline Ewart received income during their lifetimes according to the terms and conditions set forth in item Fourth (a) of the will of Samuel Franklin Ewart.